UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:19-cv-371-Orl-41KRS

| | |
|---|---|
| STAY FRESH VAPE CO., INC., | ) |
| *a Florida corporation*, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| VAPE STORM LABS LLC d/b/a | ) |
| KNOWN DISTRO, | ) |
| *an Idaho limited liability company*, | ) |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT [ECF NO. 1] AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW, Defendant, VAPE STORM LABS LLC d/b/a KNOWN DISTRO ("Defendant" or "Vape Storm"), by and through its undersigned counsel, hereby files its Motion to Dismiss Plaintiff, STAY FRESH VAPE CO., INC's ("Plaintiff" or "Stay Fresh") Complaint [ECF No. 1], pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(2)(3)(6). In support of the Motion, Defendant states:

The instant matter was originally commenced by the Plaintiff via the filing of a summons and complaint (the "Complaint") in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Case No: 2019-CA-001375-O. *See* **Exhibit "A"**. Prior to responding to the Complaint, the Defendant removed the instant action to this Court pursuant to 28 U.S.C. §1332.

**STATEMENT OF FACTS**

Stay Fresh sells "vape juice", also known as "e-juice", the liquid that is heated by e-cigarettes and other vaping implements. *See* **Exhibit "A"** at ¶7. Stay Fresh is a Florida corporation that sells its products throughout the country by marketing to customers in every state. Vape Storm

is a limited liability company created under the laws of the state of Idaho, and conducts all of its business in the state of Idaho. Vape juice is created by the combination of different ingredients that create varying flavors and strengths (like sodas – Coca Cola, Diet Coke, Pepsi, RC Cola, etc.) *Id*. at ¶8. In February 2016, Stay Fresh and Vape Storm entered into an agreement entitled, "Production and Sales Agreement" (the "Agreement"). *Id*. at ¶10; *see also* **Exhibit "B"**.[1] The Agreement required Stay Fresh to supply the recipes for the various e-liquids and boxes for the packaging of the final product to Vape Storm. *See* Exhibit "B" at §1. It was understood that Vape Storm intended to market and sell the final product, and thus was responsible for the costs of the manufacturing, advertising, and shipment of the final product to Stay Fresh's customers. *Id*. at §2. The Agreement stated that Vape Storm would receive 50% of the gross revenue generated by the sale of the product created for Stay Fresh. *Id* at §4.

Stay Fresh approached Vape Storm for all of the business between the two companies and did so in Idaho. Vape Storm never went to Florida, nor did it solicit the business with Stay Fresh. Vape Storm has some sporadic customers in Florida, yet it does and has not gone to Florida to solicit these customers. All of these customers orders are made to Vape Storm in Idaho.

Pursuant to the Agreement, Vape Storm was the exclusive manufacturer of the vape juice for one year, commencing in February 2016, and at the conclusion of the year the terms of the

---

[1] While the Plaintiff failed to attach the Agreement to the Complaint, it was implicitly incorporated by reference. With that said, a court can look beyond the four corners of the complaint and its attached exhibits when ruling on a motion to dismiss, without converting it into a motion for summary judgment. That is, a district court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Accordingly, "if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document provided it meets the centrality requirement." *Id*. (citing *Harris v. Ivax Corp*., 182 F.3d 799, 802 n.2 (11th Cir. 1999)). Accordingly, the Court may consider the Agreement and other documents attached hereto when deciding this motion to dismiss as it is central to the complaint and undisputed in terms of authenticity. *See, e.g.*, *Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1316 (M.D. Fla. 2017).

Agreement automatically renewed for an additional year unless either party provided written notice of termination within 90 days. *Id*. On July 19, 2017, Stay Fresh terminated the Agreement via e-mail with a signed notice of termination attached. *See* **Exhibit "C"**. Thus, the Agreement was expected to terminate on October 17, 2017. *See* **Exhibit "B"** at §3(B). However, prior to such date, Stay Fresh and Vape Storm entered into discussions and reached an oral agreement (the "Oral Agreement") in which Vape Storm continued to manufacture bottles of Stay Fresh's products for Vape Storm to sell on its own. *See* **Exhibit "A"** at ¶12. Under the Oral Agreement, Vape Storm was required to pay Stay Fresh $3.30 per bottle sold pursuant to reports issued every two weeks to Stay Fresh. *Id*.

Then, on or about October 11, 2017, Stay Fresh inquired of Vape Storm about reengaging the manufacturing and distribution of the e-liquids. *See* **Exhibit "D"**. Stay Fresh sent an email entitled "Business" and discussed prices of the products and potential distribution territory for the products. *Id*. Although Stay Fresh stated that it could not guarantee "[it's] going to happen", Stay Fresh solicited price comparisons from Vape Storm and told Vape Storm "you can keep your deal the same at 3.30" referencing the Agreement terms. *Id*.

Vape Storm responded and said it would run a price comparison to determine if Vape Storm could compete with the pricing structure suggested, and specifically stated "Honestly this could work out well". *Id*. Stay Fresh responded with terms for a new agreement and even stated "we could do before" – an implication that the original terms of the Agreement were still viable. *Id*. Stay Fresh concluded the email discussion with a request that Vape Storm "let [Stay Fresh] know" what terms and pricing Vape Storm proposed. *Id*.

October 12, 2017, Derek Dame, president of Vape Storm, texted with Stay Fresh's operations manager, and stated "I'll have the price break downs for Sonny this evening", which

was responded with "Perfect". *See* **Exhibit "E"**.  On October 16, 2017, Mr. Dame again texted Stay Fresh and stated "Did you get a chance to look over those numbers?" referring to numbers requested on October 12th.  *Id*.  Then, on October 17, 2017, Mr. Dame again texted Stay Fresh about the proposed pricing and requested a definitive response. *Id*.  Stay Fresh responded "Yea [it's] going to happen.", unambiguously rescinding the notice of termination. *Id*.  Vape Storm then proceeded under the original terms of the Agreement for its business with Stay Fresh.

Plaintiff confirmed its continued business relationship with Defendant on December 14, 2017 when it voiced its concern about Defendant's former customer reengaging Defendant when it stated to Mr. Dame: "Yo you gotta tell ecd they can only order from us. I'm sorry we took it from you in the first place, but they just reduced their order by $30,000 and gave it to you" and "I'm sorry but that isn't gonna fly and now that we're working back together it's pretty sketch you took it" and "I'm about to give you all of our business again".  *See* **Exhibit "F"**.

It is upon these facts that the Defendant moves to dismiss this action.

<u>**MEMORANDUM OF LAW**</u>

**A.  The Instant Action Must Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(3)**

The instant action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(3), for improper venue, as the Agreement contains a valid forum selection clause designating the courts of Canyon County, Idaho as the venue for any legal action arising out of the Agreement.  *See* **Exhibit "B".** Motions to dismiss that are based upon choice-of-forum and choice-of-law provisions in a contract are brought pursuant to Fed. R. Civ. P. 12(b)(3) as motions to dismiss for improper venue, rather than as motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See Lipcon v Underwriters at Lloyd's*, 148 F.3d 1285, 1289 (11th Cir. 1998).

When a forum selection clause selects a non-federal forum for disputes, the appropriate way to enforce the clause is through the doctrine of forum *non conveniens*. *See Atl. Marine Constr.*

*Co. v. United States Dist. Court*, 571 U.S. 49, 60 (2013).   Under a traditional *forum non conveniens* analysis, the movant "must show that '(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *GDG Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299, 1312 (11th Cir. 2017) (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001)).

When there is a *single* (valid and enforceable) forum selection clause selecting a non-federal forum, the traditional *forum non conveniens* analysis is altered in two significant ways. First, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum selection clause, the plaintiff bears the burden of establishing that" enforcement of the forum selection clause is "unwarranted." *Atl. Marine*, 571 U.S. at 63; *see also GDG Acquisitions*, 849 F.3d at 1312.   Second, the court "should not consider arguments about the parties' private interests[,]" because, "[w]hen parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient." *Atl. Marine*, 571 U.S. at 64; *see also GDG Acquisitions*, 849 F.3d at 1312.  The court "must deem the private interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64; *see also GDG Acquisitions*, 849 F.3d at 1312. Consequently, the court may only consider arguments about public interest factors. *Atl. Marine*, 571 U.S. at 64; *see also GDG Acquisitions*, 849 F.3d at 1312. "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64; *see also GDG Acquisitions*, 849 F.3d at 1312.

Forum-selection clauses are unenforceable as "'unreasonable under the circumstances' only where: (1) the formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3)

the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy." *See Liles v. Ginn-La West End, Inc.*, 631 F.3d 1242, 1245 (11th Cir. 2011); *Lipcon v Underwriters at Lloyd's*, 148 F.3d 1296.

"The financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause." *P&S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807-08 (11th Cir. 2003). Moreover, the economic disparity between the parties asserted in conjunction with a financial hardship is insufficient to refuse enforcement of a forum selection clause. *See id.*

Here, the Agreement contains a valid and enforceable forum selection clause designating the courts of Canyon County, Idaho as the only venue for legal action arising out of disputes involving the Agreement. *See* **Exhibit "B"** at §9.  The Agreement, specifically with reference to the forum selection clause, was not induced by either fraud or overreaching, as the Plaintiff is not being deprived of its day in court or a remedy by inconvenience or unfairness of the local courts, and enforcement of such term would not contravene any strong public policy.  While the Plaintiff alleges in the Complaint that the breach of contract claims arises out of the "Oral Agreement" and not the Agreement, the actions and conduct of the parties following Plaintiff's notice of termination evidences that the parties' dealings were still governed by the terms of the Agreement.  Even though the Plaintiff contends that there was a new relationship, the reality is that the

After Stay Fresh served its written notice of termination of the Agreement, in July 2017, Stay Fresh rescinded the termination to continue business with Vape Storm until such time a new agreement could be prepared. *See* **Exhibits "B" "E", and "F"**. During an exchange of emails with the subject line "Business" Stay Fresh solicited price comparisons from Vape Storm and stated

"you can keep your deal the same at 3.30" referencing the Agreement terms. *Id.* Then, in response, Vape Storm stated "Honestly this could work out well". *Id.* In which, Stay Fresh responded "we could do before" (implying the original terms of the Agreement were acceptable to it). And, then finally, in response to Vape Storm's disclosure that it would take Vape Storm a few weeks to get up and running again, Stay Fresh stated "Yea [it's] going to happen." *See* **Exhibit "F".**

This correspondence unambiguously demonstrates that Stay Fresh rescinded the Notice of Termination, and the terms of the Agreement continued for the ongoing (and reengaged) business between the parties. Thus, the forum selection provision that designated Canyon County, Idaho as the venue for all disputes controls the claims herein, and instant action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(3), as the Complaint was filed in an improper venue and must be filed in Canyon County, Idaho.

**B. Plaintiff's Causes of Action for Goods Sold and Account Stated Must Be Dismissed**

Plaintiff's causes of action for Good Sold and Account Stated must be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(6), for failure to state a cause of action, as Stay Fresh does not have standing to bring the action as it was not a party to the transactions stated in the claims.

In the Complaint, Plaintiff alleges "[Vape Storm] owed Stay Fresh Fifty Two Thousand Seven Hundred Thirty Dollars ($52,730.00) that is due with interest since September 29, 2018 for the goods sold and delivered by Stay Fresh to [Vape Storm] between August 29 and October 28, 2018…" *See* **Exhibit "A"** at ¶42. In support of its claim for Goods Sold, Stay Fresh attached several invoices sent to Vape Storm (the "Invoices"). *See* **Exhibit "G"**. However, the Invoices were issued from a different party (as admitted in the Complaint), SS Vape Brands ("SS Vape"). *Id., see also* **Exhibit "A".** Stay Fresh alleges that the Invoices were sent on its behalf by SS Vape,

and represent products sold to Vape Storm by Stay Fresh. *See* **Exhibit "A"** at ¶43.  However, Stay Fresh's name, information, and reference is absent from the Invoices. *See* **Exhibit "G"**.

Additionally, Plaintiff alleges a cause of action for Account Stated against Vape Storm. Specifically, Stay Fresh claims that it issued the Invoices and Vape Storm did not object to the Invoices. *See* **Exhibit "A"** at ¶47.  As with its claim for Goods Sold, Stay Fresh explicitly relies on the Invoices to support the Account Stated claim, despite the fact that the Invoices were not issued by Stay Fresh, nor do they reference or disclose Stay Fresh as a party to the transaction.

A rule of contract law is that one who is not a party to an agreement cannot enforce its terms against one who is a party. *See Lawson v Life of the South Ins. Co,*, 648 F.3d 1166, 1167-68 (11th Cir. 2011)[2].  Stay Fresh's assertion that the Invoices were sent on its behalf by SS Vape, and represent products sold to Vape Storm by Stay Fresh fails to adequately plead that it has the legal right to enforce the Invoices as a non-party through either assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver or estoppel, as required by the law.  As such, Stay Fresh does not have any legal right to enforce the Invoices. Such right falls squarely to SS Vape, the entity listed on the Invoices and who sent the Invoices to Vape Storm.

Additionally, pursuant to Florida law, to establish a claim for account stated, a plaintiff is "required to prove that there was an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions, and promising payment." *See*

---

[2] *See also Walsh v. Columbus, H.V. & A.R. Co.*, 176 U.S. 469, 479, (1900); *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169 (11th Cir. 2009); *United States v. Puentes*, 50 F.3d 1567, 1574 (11th Cir. 1995); 13 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 37:1 (4th ed. 1999) ("As a general rule, strangers to a contract acquire no rights under such a contract." (quotation marks omitted)). The right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves.  A non-party may only have a legal right to enforce a contract, "through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Lawson v Life of the South Ins. Co.*, 648 F.3d at 1168; *Arthur Andersen LLP v Carlisle*, 556 U.S. 624, 631 (2009).

*Infiniti Employment Sols., Inc. v. Benton Glob., LLC,* No. 615CV315ORL22KRS, 2015 WL 5716037, at *3 (M.D. Fla. Sept. 21, 2015) *citing Nants v. F.D.I.C.,* 864 F. Supp.. 1211, 1219 (S.D. Fla. 1994); *Burt v Hudson & Keyse, LLC*, 138 So. 3d 1193, 1195-96 (Fla. 5th DCA 2014).   Stay Fresh simply pleads that it issued the Invoices, but fails to allege that Vape Storm promised to make any payments according to a specific payment schedule or that the parties had a prior relationship. *See* **Exhibit "A"** at ¶47.   Thus, for the foregoing reasons, Plaintiff's causes of action for Goods Sold and Account Stated must be dismissed pursuant to  Stay Fresh's assertion that the Invoices were sent on its behalf by SS Vape, and represent products sold to Vape Storm by Stay Fresh fails to adequately plead that it has the legal right to enforce the Invoices as a non-party through either assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver or estoppel, as required by the law.   As such, Stay Fresh does not have any legal right to enforce the Invoices.   Such right falls squarely to SS Vape, the entity listed on the Invoices and who sent the Invoices to Vape Storm.

**C.  Plaintiff's Cause of Action for Fraud Must Be Dismissed**

Plaintiff's cause of action for fraud must be dismissed pursuant to Fed. R. Civ. P.  12(b)(6) as the Plaintiff's fraud claim states a cause of action in tort that is not separate and apart from Plaintiff's alleged breach of contract claim and the Plaintiff failed to plead its fraud claim with requisite particularity, as required by Fed. R. Civ. P.  9(b).

i.    *Plaintiff's Fraud Claim Is Not Separate and Apart from Its Breach of Contract Claim*

To set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort. *See Tiara Condominium Association, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 408 (S.D. Fla. 2014) (Pariente, J., concurring); (quoting *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518,

519 (Fla. 3d DCA 1986)); *see also Freeman v. Sharpe Res. Corp.*, No. 6:12-CV-1584-ORL-22T, 2013 WL 2151723, at *7 (M.D. Fla. May 16, 2013). In *Tiara* the court stated "…in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim. *See Tiara Condominium Association, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d at 408-09[3].

In the instant matter, Stay Fresh solely alleges, "[Vape Storm] misrepresented to Stay Fresh the quantity of bottles of Stay Fresh's proprietary and confidential products that [Vape Storm] manufactured and sold so as to avoid paying Stay Fresh for the true number of bottles of Stay Fresh's product sold, thereby damaging Stay Fresh for [Vape Storm]'s own pecuniary advantage." *See* **Exhibit "A"** at ¶32.  The only damages claimed by Stay Fresh for the fraud are the same economic losses that arise from Vape Storm's alleged breach of contract. *Id*. at ¶¶35,38.  Compared to the damages as to breach of contract: "[Vape Storm] breached the Oral Agreement by manufacturing and selling Stay Fresh's propriety and confidential products…without paying Stay Fresh $3.30 per bottle for the same." *Id*. at ¶26.   The exact same damages.

Accordingly, Plaintiff failed to plead adequate damages for its cause of action for fraud independent of its breach of contract claim.  *See Freeman v. Sharpe Res. Corp.*, 2013 U.S. Dist. LEXIS 72288 (M.D. Fla. May 16, 2013) (stating that "[a] plaintiff will not succeed merely by labeling a breach of contract claim 'fraud in the inducement;' rather, the alleged fraud must be separate from the performance of the contract.").   Moreover, the Plaintiff's alleged in the Complaint that the parties were already operating under the Oral Agreement when Vape Storm

---

[3] *See also Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982) (holding that there must be a tort "distinguishable from or independent of [the] breach of contract" in order for a party to bring a valid claim in tort based on a breach in a contractual relationship); *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[A] breach of contract, alone, cannot constitute a cause of action in tort . . . . **It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence."** (citations omitted)(emphasis added)).

allegedly began keeping more than its contractual share. *See* **Exhibit "A"** at ¶31. These allegations undermine the Plaintiff's claim of reliance on the Defendant's misrepresentation. *Tiara*, 110 So. 3d at 409 (Pariente, J., concurring)("…when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss.") (quoting *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 542 (Fla. 2004)). Thus, Plaintiff's fraud claim must fail, and the Defendant's motion to dismiss must be granted as to such cause of action.

<ol type="i" start="9">
<li><strong><em>Plaintiff Fails to Plead it Fraud Claim with Requisite Particularity</em></strong></li>
</ol>

Fed. R. Civ. P. 9(b) states that: "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See* Fed. R. Civ. P. 9(b). This rule "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants' against spurious charges of immoral and fraudulent behavior.'" *Durham v. Business Management Associates*, 847 F.2d 1505, 1511 (11th Cir. 1988); *Medalie v FSC Sec. Corp.*, F. Supp.2d 1295, 1306 (S.D. Fla. 2000).

Further, "Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *See Medalie v FSC Sec. Corp.*, F. Supp. 2d at 1306; *O'Brien v. National Property Analysts Partners*, 719 F. Supp. 222, 225 (S.D.N.Y. 1989) (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n.20 (2d Cir. 1979); *see also Durham*, 847 F.2d at 1511 ("The application of [Rule 9(b)] must not abrogate the concept of notice pleading.").

Rule 9(b) may be satisfied if the complaint sets forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and
(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants "obtained as a consequence of the fraud."

*See Medalie v FSC Sec. Corp.*, F. Supp. 2d at 1306; *see also Durham*, 847 F.2d at 1512 ("Allegations of date, time, or place satisfy the Rule 9(b) requirement that circumstances of the alleged fraud must be plead with particularity …").

When pleading a cause of action for fraud, the claimant should specifically identify the individuals who made the alleged misrepresentations, the time of the alleged fraud, and the place of the alleged fraud. *See Anthony Distributors, Inc. v. Miller Brewing Co.*, 904 F. Supp. 1363, 1365 (M.D. Fla. 1995). The plaintiff should also quote or paraphrase the alleged fraudulent misrepresentations made by the defendant. *See Metrahealth Insurance Co. v. Anclote Psychiatric Hospital, Ltd.*, 1997 U.S. Dist. LEXIS 18690 (M.D. Fla. Oct. 23, 1997).

In the instant matter, Plaintiff failed to adequately meet the Rule 9(b) pleading standard as to its cause of action for fraud.  Plaintiff only alleged that "[Vape Storm] misrepresented to Stay Fresh the quantity of bottles of Stay Fresh's proprietary and confidential products that [Vape Storm]  manufactured and sold so as to avoid paying Stay Fresh for the true number of bottles of Stay Fresh's product sold, thereby damaging Stay Fresh for [Vape Storm]'s own pecuniary advantage." *See* **Exhibit "A"** at ¶32.   Additionally, Plaintiff plead allegations containing threadbare and conclusionary assertions that Plaintiff meets the remaining elements of a valid fraud cause of action, without providing any details or particulars.  The remainder of the Complaint is devoid of any other facts as to the specifics of Plaintiff's fraud claims.

Most importantly, the Complaint is devoid of any allegations as to meet the requirements of Fed. R. Civ. P. 9(b).  As such, Plaintiff's cause of action for fraud must be dismissed for its failure to state a valid cause of action pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

**D.  This Court Does Not Possess Personal Jurisdiction Over the Defendant**

The instant action must be dismissed, pursuant to Fed. R. Civ. P. 12(b)(2), as this Court does not possess requisite personal jurisdiction over the Defendant.  In the Complaint, the Plaintiff alleges that Vape Storm is subject to long-arm jurisdiction of the Courts of the State of Florida under Florida Statutes §48.193. *See* **Exhibit "A"** at ¶3.  Stay Fresh alleged that Vape Storm has, "sufficient, and not isolated or immaterial, 'minimum contacts' with the State of Florida as it not only agreed to provide and did provide manufacturing and other services to Stay Fresh located in Orange County, Florida, it also entered into an agreement with Stay Fresh and agreed to make payment to Stay Fresh thereunder in the State of Florida and regularly communicated electronically and via telephone with Stay Fresh's offices and directors concerning its services in the State of Florida." *Id*. at ¶4.

The determination of personal jurisdiction over a nonresident defendant consists of a two-part inquiry: (1) whether the exercise of jurisdiction is appropriate under Florida's long-arm statute; and (2) whether the exercise of personal jurisdiction would violate due process. *See Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1205 (2010); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (1989).  The long-arm statute is to be strictly construed in favor of the nonresident defendant. *See Navas v. Brand*, 130 So. 3d 766, 770 (Fla. 3d DCA 2014).

i. *§ 48.193(1)(a)(1)—Engaging in a Business Venture in Florida*

First, the Plaintiff alleges that the Defendant is subject to Florida's Long Arm Statute § 48.193(1)(a)(1). Fla. Stat.   § 48.193(1)(a)(1), Fla. Stat. provides for personal jurisdiction for a cause of action "arising from" the acts of a nonresident in operating, conducting, engaging in, or carrying on a business or business venture in the state of Florida or having an office or agency in

the state of Florida. *See* § 48.193(1)(a)(1), Fla. Stat.; *see also Stonepeak Partners, LP v Tall Tower Capital, LLC*, 231 So. 3d 548, 555 (Fla. 2d DCA 2017).

For purposes of §48.193(1)(a)(1), to demonstrate that a nonresident defendant is "carrying on business" the defendant's activities "must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *See Stonepeak Partners, LP v Tall Tower Capital, LLC*, 231 So. 3d at 555; *see also RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. App'x 779, 783 (11th Cir. 2014) (quoting *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005)). Factors to consider in making this determination "include: (1) 'the presence and operation of an office in Florida'; (2) 'the possession and maintenance of a license to do business in Florida'; (3) 'the number of Florida clients served'; and (4) 'the percentage of overall revenue gleaned from Florida clients.'" *See Stonepeak Partners, LP v Tall Tower Capital, LLC*, 231 So. 3d at 555; *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. App'x at 784. The intent of the long-arm statute is "to regard nonresidents who have availed themselves of the privilege of 'dealing in goods, services, or property, whether in a professional or nonprofessional capacity, within the State in anticipation of economic gain,' as operating a business or business venture." *See Stonepeak Partners, LP v Tall Tower Capital, LLC*, 231 So. 3d at 557; *Labbee v. Harrington*, 913 So. 2d 679, 683 (Fla. 3d DCA 2005) (quoting *De Vaney v. Rumsch*, 228 So. 2d 904, 907 (Fla. 1969)).

Namely, the Plaintiff alleges that the Defendant marketed and sold goods to citizens in and of the State of Florida. *See* **Exhibit "A"** at ¶3. Such is the full extent of the Plaintiff's allegations as to § 48.193(1)(a)(1), Fla. Stat. The Plaintiff fails to allege any additional facts as to what business the Defendant operated, conducted engaged in or carried on in the State of Florida, or what marketing or products the Defendant sold in the State of Florida.

Contrary to the Plaintiff's limited allegations, the factors enumerated by the courts for consideration under §48.193(1)(a)(1), Fla. Stat, when applied to Vape Storm, such do not support the implementation of Florida's long arm jurisdiction statute to Vape Storm.  The Defendant does not have an office in the state of Florida. *See* Affidavit of Derek Dame ("Dame Affidavit").  The Defendant does not have a license to conduct business in the state of Florida. *Id*.  The Defendant has never directly marketed or advertised its products to any customers in the state of Florida. *Id*.  In 2018, the Defendant shipped to only sixteen customers  in the state of Florida for a total of about $21,000 of gross receipts (including Plaintiff), which accounts for less than 1% of Plaintiff's total revenues (over $2,100,000) that year. *Id*.  Moreover, unt of its products to customers in the state of Florida, which in the year 2018 consisted of 16 total customers generating a combined revenue of about $21,000, compared to over $2,100,000 of total revenue collected from all of Vape Storm's business activities. *Id.*

During the course of Vape Storm's existence, the company has had a total of 44 customers in the state of Florida, and all of the customers were obtained by the customers approaching Vape Storm in Idaho. *Id.*  In the year 2017, Vape Storm sold approximately 1,200,000 bottles of e-liquid to customers in various states and countries, of which only about 97,000 units were shipped to customers in the State of Florida (approximately 87,000 of which were shipped to Stay Fresh and was Stay Fresh's product).  *Id.*  Thus, less than .833% of all of Vape Storm's 2017 sales were to customers in the State of Florida, other than Stay Fresh. *Id.*

In the year 2018, Vape Storm sold approximately 620,000 bottles of e-liquid to customers in various states and countries, of which only about 25,000 units were shipped to the State of Florida (approximately 23,000 of which were shipped to Stay Fresh and was Stay Fresh's product).

*Id.* Thus, less than .45% of all of Vape Storm's 2018 sales were to customers in the State of Florida, other than Stay Fresh. *Id*.

Thus, as the Plaintiff failed to provide sufficient details of the Defendant's alleged business in the state of Florida, namely, the marketing and selling of products, and the actual business transactions to the State of Florida evidences minimal contacts at best, the Court does not possess long-arm jurisdiction over the Defendant pursuant to §48.193(1)(a)(1), Fla. Stat.

ii.   *§ 48.193(1)(a)(2)—Committing a Tortious Act in Florida*

Second, the Plaintiff alleges that the Defendant is subject to Florida long-arm jurisdiction under §48.193(1)(a)(2), Fla. Stat. Personal jurisdiction under Florida's long-arm statute may be general or specific, depending on the nature of the defendant's contacts with Florida. *See Stonepeak Partners, LP*, 231 So. 3d at 552; *Wiggins v. Tigrent, Inc.*, 147 So. 3d 76, 85 (Fla. 2d DCA 2014). § 48.193(1)(a)(2) of Florida's long-arm statute applies to actions "arising from" a person "[c]ommitting a tortious act within this state." *Id*.  Such a lawsuit is based on specific jurisdiction. *See Wiggins*, 147 So. 3d at 86.  Specific jurisdiction also "requires a causal connection between the defendant's activities in Florida and the plaintiff's cause of action, a requirement known as 'connexity.'" *Canale v. Rubin*, 20 So. 3d 466, 466 (Fla. 2d DCA 2009) (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)).

 In the instant action Stay Fresh alleges that Vape Storm is subject to long-arm jurisdiction pursuant to §48.193(1)(a)(2), Fla. Stat, as Vape Storm committed a tortious act within the State of Florida. *See* **Exhibit "A"** at ¶3.  Specifically, Stay Fresh alleges that Vape Storm committed a fraud on Stay Fresh by making false statements and misrepresentations to Stay Fresh in Orange County, Florida via electronic and telephonic means and by failing to pay Stay Fresh all sums due it in Orange County, Florida. *Id*.

However, as detailed *supra*, the Plaintiff's cause of action for fraud against the Defendant is subject to dismissal on several grounds, including, Plaintiff's fraud claim states a cause of action in tort that is not separate and apart from Plaintiff's alleged breach of contract claim, and the Plaintiff failed to plead its fraud claim with requisite particularity, as required by Fed. R. Civ. P. 9(b). [*See* § C Above].  Specifically, the Plaintiff fails to allege any details as to the alleged fraud committed by the Defendant, including, precisely what statements were made by the Defendant, the time and place of such statements and the person responsible for making them, and the content of such statements and the manner in which it misled the Plaintiff.  The Plaintiff's allegation that the Defendant made false statements and misrepresentations through electronic and telephonic means is insufficient to subject the Defendant to long-arm jurisdiction. *See Abdo v. Adbo*, 2018 Fla. App. LEXIS 18476 (Fla. 2d DCA 2018) (Denying long-arm jurisdiction pursuant to §48.193(1)(a)(1), Fla. Stat where the Amended Complaint failed to contain sufficient factual allegations for the court to exercise its long-arm jurisdiction).

Accordingly, the Court must conclude that Vape Storm is not subject to long-arm jurisdiction pursuant to §48.193(1)(a)(1), Fla. Stat., as the Plaintiff failed to allege sufficient facts and details to substantiate its fraud claim against the Defendant.

### iii. *§ 48.193(1)(a)(6)—Placement of Product in Commerce*

Third, the Plaintiff alleges that the Defendant is subject to long-arm jurisdiction pursuant to §48.193(1)(a)(6), Fla. Stat.  § 48.193(1)(a)(6), Fla. Stat., provides for jurisdiction over an out-of-state defendant for causes of action arising out of the following acts: "Causing injury to persons or property within Florida arising out of an act or omission by the defendant outside Florida, if, at or about the time of the injury, either: (a) the defendant was engaged in solicitation or service activities within Florida; or (b) products, materials, or things processed, serviced, or manufactured

by the defendant anywhere were used or consumed within Florida in the ordinary course of commerce, trade, or use." Fla. Stat. § 48.193(1)(a)(6); *see also S. Wall Prods. v. Bolin*, 251 So. 3d 935, 939 (Fla. 4th DCA 2018).  Clearly this statute is to protect consumers from the harm that a product may cause (defective products, etc.)  The statute was not intended to be used as a catch-all to subject everyone who is in any business to the Florida courts.

The assertion of jurisdiction under  F.S. §48.193(1)(a)(6), is frequently referred to as jurisdiction based upon a manufacturer placing its goods in the stream of commerce. *Id*.  The United State Supreme Court has limited that type of jurisdiction over a manufacturer on due process grounds, concluding that merely placing goods in the stream of commerce does not create sufficient minimum contacts to warrant the assertion of jurisdiction. *S. Wall Prods. v. Bolin*, 251 So. 3d at 939-40.

In *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 886, (2011), the Court held that a manufacturer who did not have offices or employees in the state that the claimant sought to assert jurisdiction, and did not advertise in the state, could not be subject to jurisdiction in that state.  *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112, (1987)."The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *J. McIntyre Machinery, Ltd.*, 564 U.S. at 883; *S. Wall Prods.*, 251 So. 3d at 940.  The intent behind the long arm statute is to hold manufacturers and others responsible in Florida for defective products and other negligence, not for breach of contract claims where the contract was made outside the State of Florida with a foreign company.

In the instant action, Plaintiff alleges that the Defendant is subject to long arm jurisdiction because the Defendant caused "injury to Stay Fresh within the State of Florida (i) while engaged in solicitation (i.e. sales) and service activities (i.e. production and manufacture of Stay Fresh's products) within the State of Florida; and (ii) while products, materials and things processed and/or serviced by Stay Fresh were used and/or consumed within the State of Florida in the ordinary course of trade, commerce and use thereof;" *See* **Exhibit "A"** at ¶3. Stay Fresh fails to allege what injury was suffered by it in the State of Florida due to the Defendant's actions. Most glaringly, Stay Fresh also alleges that the products and things consumed within the state of Florida in the ordinary course of trade, commerce and use thereof, were "processed and/or serviced by Stay Fresh," and not the Defendant. *Id*. And, of course, there is no claim by Stay Fresh that any of the products were defective or causes an injury to any person.

While the Plaintiff alleges that the Defendant solicited business within the state of Florida and manufactured and sold products into the state of Florida, it provides scarce details substantiating such allegations. The Plaintiff alleges that Stay Fresh and Vape Storm entered into the Agreement in February of 2016 but provides no allegations or details as to where the Agreement was agreed to. *See* **Exhibit "A"**. Contrary to the Plaintiff's unsupported allegations that the Defendant solicited the production and manufacture of Stay Fresh's products in Florida, it was in fact Plaintiff that solicited the Defendant to enterer into the Agreement in the state of Idaho. *See* Dame Affidavit. Stay Fresh was referred to Vape Storm by one of its employees, who was an acquittance of an employee of Vape Storm and approached Vape Storm regarding the manufacturing of its products in Idaho. *Id*. As such, contrary to Stay Fresh's allegations, Vape Storm did not engage in solicitation, or any other service activities within the state of Florida. In

fact, Vape Storm does not undertake any marketing, advertising or other solicitation of services in the state of Florida. *Id.*

Further, while the Defendant did manufacture products for Stay Fresh pursuant to the Agreement, it did not introduce those products into the state of Florida through the ordinary course of trade, commerce and use thereof.  Pursuant to the terms of the Agreement, at all times, the products manufactured by Vape Storm for Stay Fresh, were the sole property of Stay Fresh and Vape Storm never possessed any ownership interest in the products. *See* **Exhibit "A"** at §8[4].  As such, while Vape Storm may have shipped products back to Stay Fresh in the state of Florida, and those products were used and/or consumed in the state of Florida, they were not introduced into the ordinary stream of commerce by Vape Storm, but to the contrary, by Stay Fresh.

Moreover, even if Vape Storm did introduce products and materials into the state of Florida through the ordinary course of trade or commerce, the "substantial connection" between Vape Storm and the state of Florida necessary for a finding of minimum contacts must come about by an action of Vape Storm purposefully directed toward the forum state. *See J. McIntyre Machinery, Ltd. v*, 564 U.S. at 883; *S. Wall Prods.*, 251 So. 3d at 940.  The placement of a product into the stream of commerce, without more, is not an act of Vape Storm purposefully directed toward the state of Florida." *Id.*

Outside of the fact that Vape Storm shipped and sold a small and isolated (from the Agreement) number of products and material into the state of Florida, Vape Storm:

---

[4] The Agreement expressly provides: "8. Ownership. VS acknowledges that the Customer is the owner and copyright holder (to the extent that copyrights exist), of all Information and Materials that Customer gives to VS. The Customer acknowledges that VS is the owner and copyright holder (to the extent that copyrights exist), of all Information and Materials that VS gives to Customer. This does not include any ideas, product packaging, label design, graphic design bearing The Customer's mark or graphic design made exclusively for The Customer. Any of the listed above items is to become Intellectual Property of the Customer upon their inception or creation." *See* **Exhibit "A"** at §8.

- Does not and never conducted business on a continuous and systematic basis in the state of Florida;
- Does not and never had any offices, manufacturing plants, distribution or service centers or other facilities in Florida;
- Does not and never had any employees, directors, managers, sales representatives, or corporate officers in Florida, nor has it ever had any person or subsidiary in Florida who can exercise discretion or control over Vape Storm;
- Does not have nor has it ever had any bank accounts or a mailing address or telephone number in Florida;
- Has never been obligated to pay taxes in Florida;
- Has never been qualified, licensed, authorized, or registered to conduct business in Florida;
- Does not have nor has it ever had a registered agent or other person authorized to accept service of process in Florida; and
- Does not have any control over the distribution of products in the state of Florida once they are shipped back to Stay Fresh.

*See* Dame Affidavit.

Thus, Vape Storm did not solicit services in the state of Florida, its products were not introduced into the ordinary steam of commerce by Vape Storm, rather Stay Fresh did such, and there does not exist a "substantial connection" between the state of Florida and Vape Storm necessary for a finding of minimum contacts. Accordingly, Vape Storm is not subject to long-arm jurisdiction of this Court pursuant to §48.193(1)(a)(6), Fla. Stat.

*iv.* § *48.193(1)(a)(6)—Breach of Contract*

Fourth, and finally, the Plaintiff alleges that the Defendant is subject to long-arm jurisdiction pursuant to §48.193(1)(a)(7), Fla. Stat., which provides for jurisdiction over an out-of-state defendant where the defendant failed to pay on a contract requiring payment in Florida. *See Cornerstone Inv. Funding, LLC v. Painted Post Grp., Inc*., 188 So. 3d 904, 905 (Fla. 4th DCA 2016). Plaintiff alleges that the Defendant breached the Agreement by its failure to "i.e. timely fulfillment of Stay Fresh's orders and making full, accurate and timely reporting and payment to Stay Fresh pursuant to the parties' contract." *See* **Exhibit "A"** at ¶3. In custom with the allegations

described above, Plaintiff fails to allege adequate details as to its allegations concerning the requirements under the statute.  Specifically, the Plaintiff fails to allege which agreement it is claiming the Defendant breached, the Agreement or the alleged Oral Agreement. *Id*.  The type of breaches described by Plaintiff could fall under either the Agreement or the Oral Agreement.

Florida courts have determined that the mere fact that a Defendant allegedly breached a contract by failing to make payments on the contract in Florida would not constitute sufficient minimum contacts with the state of Florida to satisfy federal due process requirements. *See Cornerstone Inv. Funding, LLC*, 188 So. 3d at 906; *see also Taskey v. Burtis*, 785 So. 2d 557, 559 (Fla. 4th DCA 2001); *Labry v. Whitney Nat'l Bank*, 8 So. 3d 1239, 1241 (Fla. 1st DCA 2009); *Ganiko v. Ganiko*, 826 So. 2d 391, 394-95 (Fla. 1st DCA 2002).[5]

Florida courts have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *See Venetian Salami Co. v. Parthenais*, 554 So. 2d at 501.  These factors--prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing--that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum. *Id*.

As such, even if it is proven that the Defendant is in breach of its obligations under the Agreement, specifically as to a failure to make payments due in Florida, such alone does not satisfy the second prong of the test, requiring sufficient minimum contacts with the state of Florida.

---

[5] "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests, *International Shoe Co. v. Washington, supra*, 326 U.S., at 319, or on "conceptualistic . . . theories of the place of contracting or of performance," *See Venetian Salami Co. v. Parthenais*, 554 So. 2d at 501.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

Moreover, while the Plaintiff loosely alleges that payment was due to it by the Defendant in the state of Florida, nothing in the Agreement or the Oral Agreement requires payment to be made in the state of Florida.  The Agreement states that payment will be made through ACH transfer or overnight delivery service, but no address or account, let alone one in Florida, is provided for in the Agreement. *See* **Exhibit "A"** at §4.  In fact, the state of Florida is not even mentioned in the entirety of the Agreement. *Id.* Thus, the Defendant is not subject to Florida's long-arm jurisdiction pursuant to §48.193(1)(a)(7), Fla. Stat.

   *v. Minimum Contacts*

The United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, (1945), held that  in order to subject a defendant to an in personam judgment when he is not present within the territory of the forum, due process requires that the defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See Venetian Salami Co.*, at 500.  The test is whether the defendant's conduct in connection with the forum state is "such that he should reasonably anticipate being hauled into court there." *Id*; *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

Under a given factual situation, even though a nonresident may appear to fall within the wording of a long arm statute, a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts with the forum state. *See Venetian Salami Co.*, supra; *Harlo Products Corp. v. Case Co.,* 360 So. 2d 1328 (Fla. 1st DCA 1978); *Jack Pickard Dodge, Inc. v. Yarbrough,* 352 So. 2d 130 (Fla. 1st DCA 1977).  The United States Supreme Court has stated, "the notion of minimum contacts encompasses only situations in which the defendant has "purposefully avail[ed] [himself or herself] of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Burger King Corp v. Rudzeqics*, 471 U.S. 462, 474-75 (1985); *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

In the instant matter, Stay Fresh alleges Vape Storm has, "sufficient, and not isolated or immaterial, 'minimum contacts' with the State of Florida as it not only agreed to provide and did provide manufacturing and other services to Stay Fresh located in Orange County, Florida, it also entered into an agreement with Stay Fresh and agreed to make payment to Stay Fresh thereunder in the State of Florida and regularly communicated electronically and via telephone with Stay Fresh's offices and directors concerning its services in the State of Florida." *Id*. at ¶4.  Such vague and conclusory statement does not meet the requirements enumerated above to establish minimum contacts.

First, Florida courts have concluded that the mere fact that a defendant allegedly breached a contract by failing to make payments on the contract in Florida would not constitute sufficient minimum contacts with the state of Florida to satisfy federal due process requirements. *See Cornerstone Inv. Funding, LLC v. Painted Post Grp., Inc.*, 188 So. 3d at 906.  Second, the manufacturing services provided by the Defendant alluded to by the Plaintiff were undertaken in Idaho, not in Florida. *See* Dame Affidavit.  Further, pursuant to the terms of the Agreement, the items manufactured by Vape Storm and shipped to Stay Fresh in Florida were the property of Stay Fresh, and as such were not products introduced into the ordinary stream of commerce by Vape Storm. *Id*.; *see also* **Exhibit "A"** at §8.

Outside of less than 1% of its total revenue in 2018 (including that to Stay Fresh), Vape Storm had no other contacts to the state of Florida, it:

- Does not and never conducted business on a continuous and systematic basis in the state of Florida;

- Does not and never had any offices, manufacturing plants, distribution or service centers or other facilities in Florida;
- Does not and never had any employees, directors, managers, sales representatives, or corporate officers in Florida, nor has it ever had any person or subsidiary in Florida who can exercise discretion or control over Vape Storm;
- Does not have nor has it ever had any bank accounts or a mailing address or telephone number in Florida;
- Has never been obligated to pay taxes in Florida;
- Has never been qualified, licensed, authorized, or registered to conduct business in Florida;
- Does not have nor has it ever had a registered agent or other person authorized to accept service of process in Florida; and
- Does not have any control over the distribution of products in the state of Florida once they are shipped back to Stay Fresh.
-

*See* Dame Affidavit.

As such, Stay Fresh has not, and cannot, establish that Vape Storm possessed the requisite minimum contacts with the state of Florida mandatory to satisfy federal due process requirements. Accordingly, Vape Storm must not be subject to Florida long-arm jurisdiction.

## CONCLUSION

For the foregoing reasons, the Defendant respectfully requests the dismissal of the instant action pursuant to Fed. R. Civ. P. s 9(b) and 12(b)(2)(3)(6), and for any other and further relief the court deems just and necessary.

Dated: March 13, 2019

Respectfully submitted,

DAVIDOFF LAW FIRM, PLLC

By: _____*/JMD/*_____
Jonathan Marc Davidoff, Esq.
*Attorneys for Defendant*
Florida Bar No.: 179833

## CERTIFICATE OF SERVICE

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered via

the ECF system on this 13th day of March 2019 to all parties via CM/ECF.

DAVIDOFF LAW FIRM, PLLC

By: _____***/JMD/***_____

Jonathan Marc Davidoff, Esq.
Florida Bar No.:  179833
Aaron R. Resnick, Esq.
Florida Bar No.: 141097
*Attorneys for Defendant*
228 East 45th Street, Suite 1700
New York, New York 10017
Tel: (212) 587-5971
Fax: (212) 658-9852
Email:  Jonathan@davidofflawfirm.com
Aresnick@thefirmmiami.com
Efile@davidofflawfirm.com
Efile@thefirmmiami.com