# EXHIBIT "B"

PRODUCTION AND SALES AGREEMENT

      This Agreement is between Vape Storm Labs LLC or acting as Known Distro ("VS") and Stay Fresh Vape Co., Inc. ("Customer"). The parties have agreed to enter into a business relationship in which VS will be providing certain services to the Customer and each party will be providing certain information to the other party. The parties now agree as follows:

1. <u>Materials and Information Supplied to VS</u>. The Customer will supply a recipe for the manufacture of e-liquids as well as all boxes used for packaging the bottles. The list of ingredients and any recipes supplied to VS shall be considered confidential Information as defined below. If by any chance, that the Customer or VS, decides at any point, to make any changes to, or modify the original recipes (provided by The Customer), including but not limited to flavor providers, sweetener/flavor/nicotine levels or PG/VG ratio, the resulting new recipe will be intellectual property of The Customer and VS claims no right to ownership of the altered recipes. VS may not change any recipe without written consent of the Customer.

2. <u>Services</u>. (A) VS shall pay for all costs of manufacturing product and shipping product from VS's location to Customer's designated locations anywhere in the United States. Customer shall pay for all advertising and marketing costs connected to the sale of the product, which if billed or sourced from VS must have written approval from Customer before invoicing. VS agrees to promote/include/pay for any and all advertising/marketing costs associated with promoting The Customer, whenever VS (or acting as Known Distro) advertises other brands that it distributes, including but not limited to print/web/email advertising and also trade shows/conventions where VS is a vendor. This does not include trade shows where The Customer is also attending, but does include trade shows where the Customer has no physical presence. Notwithstanding the prior sentences, VS shall not be obligated to promote or pay for any advertising or marketing costs associated with promoting the Customer as a single brand.

      (B) <u>Release of Product.</u> VS agrees to not market/sell/post on social media or inform the general public or any wholesale accounts, in any way, about The Customer's product until written permission is given to VS from the Customer.

3. <u>Term and Exclusivity</u>. (A) The term of this Agreement shall be for a minimum of one year commencing as of the date on which the Agreement is signed by the Customer. During the entire term of the Agreement, including any renewals as set for in Section (B) below, the Customer agrees that VS shall serve as Customer's exclusive and sole producer, manufacturer and bottler of e-liquid products. Customer shall not engage any other person, business or entity to function as the producer, manufacturer or bottler of e-liquid products for Customer. During the entire term of the Agreement, VS shall make its availability to render services to Customer a first priority item.

(B) At the end of the initial one year period, the Agreement shall renew for consecutive one year periods. After the end of the initial one year period, either party may terminate the Agreement at any time by providing the other party with 90 days advance written notice of termination. Notice sent by electronic means shall constitute written notice. Such notice may not be given until the end of the initial one year period. The only exception under which the Customer shall have the right to terminate the Agreement prior to end of the initial one year term or prior to providing the stated 90 day advance notice will be a situation where VS has notified Customer of a change in price. In such a case, the Customer may terminate the Agreement as set forth in Paragraph 4(B) below.

(C) Either party may also terminate the Agreement if one party has breached the Agreement. In such a case, the injured party will send the breaching party notice of breach . The breaching party will then have 10 business days to cure the breach. If the breach is not cured within 10 business days, the injured party can then send a second notice which will state that the Agreement is terminated. The injured party may then pursue any and all legal remedies as outlined in Paragraph 9 below.

4. <u>Price and Payment</u>. (A) <u>General Rules</u>. In most cases, VS shall receive 50% of the gross revenue generated by the sale of the product created for Customer under the terms of this Agreement. VS shall collect the revenue. VS shall calculate the amount due to VS and the amount due to Customer as of the 1st and the 15th day of each month. VS shall pay the share due to Customer within 3 business days of such dates. "Business days" will not include weekends and holidays, so in those cases the 3 day period may be a bit longer. Payment will be made through ACH transfer, or overnight delivery service. If overnight delivery is sent, The Customer will be responsible for shipping, to be billed on the next payment date. In some cases, The Customer will collect the revenue and submit the orders to VS (mainly through wholesale orders on the Customers website). Payment to VS shall be calculated as of the 1st and 15th day of each month. The Customer shall pay the share due to VS within 3 business days of being invoiced by VS. Alternatively, VS may deduct any amounts due to VS under this Section, first from any payments due to Customer, as defined in this section. If there is no payments due to The Customer on the following payment cycle, VS will give The Customer a option to pay from other funds. If an answer is not received within 2 business days, VS may deduct the amount due from the deposit listed in Section (K) below.

(B) <u>Marketing, Sales and Product Specifications</u>: VS agrees that the minimum wholesale price per bottle is $13.00, and will not offer any discounts or promotional rates, unless written permission is given by The Customer, at least 3 days in advance. VS will inform its wholesale customers that there is a manufacturer's suggested retail price (MSRP), of $25.99 per bottle. The MSRP will only be a suggestion and VS will not require any minimum price. VS may sell the product of The Customer at any retail outlet owned, operated, controlled or influenced by VS. VS will not sell the product directly to customers from its own warehouses. VS agrees to never, under any circumstances, market, sell or distribute the Customers product without it's entire packaging, which is described as a box (provided by Customer) and labeled plastic bottle with two closures. VS can sell the Customer's product to any account on credit or any other payment terms that VS decides are acceptable. Any loss of money if the money is non-collectable means both VS and the Customer do not get paid.

(C) <u>Large Direct Customer Orders</u>. When Customer places an order for a minimum quantity of bottles, as described below in (D), and such order is shipped by VS directly to the party ordering it from Customer, VS shall instead be paid the amount described below in (D) per bottle ordered and shipped. The amount due to VS shall be calculated as of the 1st and 15th day of each month. Customer shall pay VS any amount due under this Section within 15 days of being invoiced by VS. Alternatively, VS may deduct any amounts due to VS under this Section, first from any payments due to Customer under Section (A) above. If there is no payments due to The Customer on the following payment cycle, VS will give The Customer a option to pay from other funds. If an answer is not received within 2 business days, VS may deduct the amount due from the deposit listed in Section (K) below. VS has approximately ten (10) business days to fulfill any direct customer order, once placed by the customer, given that VS has enough boxes in stock (supplied by customer). If not, the ten days will be started once VS has the amount of boxes necessary in stock. If VS does not fulfill and ship the order within the ten business days, then The Customer may notify VS that the order has been canceled. In such a case, The Customer will not be held liable for any costs incurred. If the Customer does not send notice of cancellation prior to the order being shipped, then The Customer will be liable for the costs incurred.

(D) The amount to be paid by The Customer to VS will be on a sliding scale, dependent on the number of bottles ordered, as described.
- QTY 1,000 – 1,500 Bottles: $4.00
- QTY 1,501 – 2,000 Bottles: $3.75
- QTY 2,001 – 4,000 Bottles: $3.75
- QTY 4,001 + Bottles: $3.50

(E) <u>Retail Online Orders Sold by The Customer.</u> The Customer intends on selling the Customers Product online, to consumers at retail price, through a website. VS aggress to fulfill and mail these orders, within 2 business days of receipt or order. The agreed upon price per bottle that the Customer will pay VS per bottle is $10.00, including first class postage. If The Customer labels an order to be shipped priority mail, there will be an additional $4.00 added to each order that is shipped priority mail. If the priority mail costs increases (in case of a large order or postage increase), The Customer hereby grants VS to invoice extra for the order minus the cost already associated with a priority mail order. The original price per bottle due to VS may be negotiated further as detailed in Section (F) of this agreement. Payment to VS for all Online Orders shall be calculated as of the 1st and 15th day of each month. Customer shall pay VS any amount due under this Section within 15 days of being invoiced by VS. Alternatively, VS may deduct any amounts due to VS under this Section, first from any payments due to Customer under Section (A) above. If there is no payments due to The Customer on the following payment cycle, VS will give The Customer a option to pay from other funds. If an answer is not received within 2 business days, VS may deduct the amount due from the deposit listed in Section (K) below. Retail orders are defined as a product sold at the MSRP of $25.99, (or slightly lower if a discount code is provided), that are sold in low-quanitity orders to the end consumer. This provision of the contract is

non inclusive of wholesale orders obtained through The Customers website, which are defined in section 4 (A).

(F) Product Samples. When the Customer orders product samples, VS shall be paid $1.75 per bottle. Customer shall also pay for shipping Product Samples from VS's location to the location specified by Customer. The amount due to VS shall be calculated as of the 1st and 15th day of each month. Customer shall pay VS any amount due under this Section within 15 days of being invoiced by VS. Alternatively, VS may deduct any amounts due to VS under this Section, first from any payments due to Customer under Section (A) above. If there is no payments due to The Customer on the following payment cycle, VS will give The Customer a option to pay from other funds. If an answer is not received within 2 business days, VS may deduct the amount due from the deposit listed in Section (K) below. This does not include the first order of samples, which shall be deducted from the deposit paid in Section (K).

(G) Sample Packs. On occasion, VS will prepare packs that contain samples of several products. When VS creates Sample Packs, VS shall be paid $ .75 per bottle for each bottle in each Sample Pack. VS will pay for shipping Sample Packs from VS's location to the location of the wholesale customer. The Customer must be given 3 business days written notice of each VS sample order, which they may choose to accept or decline. Approval must be granted before invoice. A failure to respond within the 3 business day period shall be deemed acceptance. Payment to VS for all Sample Packs shall be calculated as of the 1st and 15th day of each month. Customer shall pay VS any amount due under this Section within 15 days of being invoiced by VS. Alternatively, VS may deduct any amounts due to VS under this Section, first from any payments due to Customer under Section (A) above. If there is no payments due to The Customer on the following payment cycle, VS will give The Customer a option to pay from other funds. If an answer is not received within 2 business days, VS may deduct the amount due from the deposit listed in Section (K) below.

(H) Graphic Designer Fees. Customer shall have the right, based on availability, to use the services of VS's in house graphic designer. All sessions with the graphic designer must be scheduled in advance. Customer will be charged the graphic designer's general billable rate. The current rate is $50 per hour and is subject to change on advance notice to Customer. The amount due to VS for graphic designer fees shall be calculated as of the 1st and 15th day of each month. Customer shall pay VS any amount due under this Section within 15 days of being invoiced by VS. Alternatively, VS may deduct any amounts due to VS under this Section, first from any payments due to Customer under Section (A) above. If there is no payments due to The Customer on the following payment cycle, VS will give The Customer a option to pay from other funds. If an answer is not received within 2 business days, VS may deduct the amount due from the deposit listed in Section (K) below. VS agrees that all graphic design items created for The Customer are property of The Customer and can be used by The Customer without discretion. VS will send all original, editable graphic files to The Customer, once they are approved by The Customer.

(I) <u>Price Changes</u>. VS reserves the right to change its prices under Sections (C), (D), (E), (F), (G) or (H) at any time upon 60 days advance written notice to Customer. Upon receipt of such notice, Customer shall have the right to either renegotiate terms with VS or terminate the Agreement. This right of termination can be exercised at any time during the 60 day period, even if the Agreement is still in the initial one year term. If the Customer has not sent VS a written notice of termination prior to the end of the 60 day notice period, then the Customer shall be deemed to have consented to the new price and the Agreement shall remain in full force and effect for the remainder of the initial one year term (if still in effect), or until the 90 days notice specified by Paragraph 3(B) has been given by one party to the other and such 90 day period has expired.

(J) <u>International Sales</u>. The parties acknowledge that in some foreign countries, product must be manufactured in that country. In such a case, VS shall receive a royalty on such sales instead of any rate previously set forth in this Paragraph. The royalty shall be negotiated on a case by case basis. The Customer will give VS a written acknowledgement that it is intending to engage in International business. This will start a ten (10) day period in which negotiations will be made. If no agreement is made within 10 days, a default royalty of no more than 10% of the profit, made per bottle, with a $0.25 cap, will be established. VS will be provided a copy of the signed agreement between The Customer and the third party to verify the agreement. All agreements will state that the third party shall not sell any product in the United States. If The Customer has to make a investment (or deposit) into the international agreement, VS agrees that The Customer is allowed to recoup the investment, without royalty, before any royalty payments are made to VS. In such a case, The Customer shall notify VS of any investment or deposit amount prior to the transfer of funds. Once The Customer has recouped its investment or deposit, The Customer shall pay VS its royalty starting from the first bottle or product sold. The Customer shall collect the revenue for such sales. The Customer shall calculate the amount due to VS and the amount due to Customer as of the 1st and the 15th day of each month. The Customer shall pay the share due to VS within 3 business days of such dates. Alternatively, VS may deduct any amounts due to VS under this Section, first from any payments due to Customer under Section (A) above. If there is no payments due to The Customer on the following payment cycle, VS will give The Customer a option to pay from other funds. If an answer is not received within 2 business days, VS may deduct the amount due from the deposit listed in Section (K) below.

(K) <u>Deposit by Customer</u>. Upon the signing of this Agreement, Customer shall pay a deposit of $15,000 to VS. VS shall use a portion of these funds for initial manufacturing costs. As the parties then conduct business, VS may apply any or all of this deposit to any payments due to VS under Sections (C), (D), (E), (F), (G), (H) or (J) above. VS shall make repayment of the deposit to The Customer, with three separate payments, within 180 days of the first bottle of The Customer's product is sold. The first payment must be made within 120 days for 33.33% of the deposit. The second payment must be made within 150 days for 33.33% of the deposit. The final re-payment, at 180 days, will be the remaining balance, less any expenses incurred by The Customer within this agreement. To the extent that VS has deducted any amounts from the deposit to satisfy payments due to VS under any Section of Paragraph 4, those amounts shall not be refunded to The Customer. VS may deduct any such amounts from any of the repayments due to The Customer in any order.

(L) <u>Negative Balance</u>. (1) At any time when Customer owes money to VS, whether or not any portion of the Deposit remains on account, VS may notify customer that unless the balance owed is paid in full within 5 days, VS shall suspend the running of the Agreement and cease all activities under the Agreement. If the Customer does not pay the full balance due within 5 days, VS may take such action and the Agreement shall remain suspended until the Customer makes full payment. If the Customer fails to make full payment within 30 days of the end of the 5 day notice period, VS may at its option terminate the remaining term of the Agreement and pursue its legal remedies against Customer.

(2) Once VS has suspended the term of the Agreement for the first time under Section (1) above, VS may require payment up front from Customer for all services and activities covered by this Agreement for the remaining terms of the Agreement.

5. <u>Warranties and Indemnification</u>. The Customer hereby warrants and guarantees to VS that any ingredients or recipes supplied to VS shall conform to all applicable rules, regulations, laws and statutes governing e-liquid products. The Customer further warrants and guarantees to VS that The Customer will pay all city, state, Federal and international license fees, permit fees and similar fees that are required for The Customer's products to be sold in that location. The Customer will provide VS with proof that all such license, permit and similar fees have been paid before any product is sold in that location. The Customer agrees to indemnify and hold VS harmless from any claims or costs (including court costs and attorney fees), incurred by VS as a result of the breach by Customer of any the terms of this Agreement. VS similarly hereby warrants and guarantees that any packaging it sells or sends out conforms to the local and state laws where the product is to be received and agrees to indemnify and hold the Customer harmless from any claims or costs (including court costs and attorney fees), incurred by the Customer as a result of the breach by VS of any the terms of this Agreement.

6. <u>Non-Disclosure</u>. In consideration for being provided with certain facts, information, plans, products, ingredients, technology, methods, processes, equipment, marketing techniques, trade secrets, recipes and creative ideas (hereafter collectively referred to as "Information"), and having the opportunity to establish a business relationship with each other, both parties hereby agree to refrain from disclosing in any manner, to anyone, any and all of the above Information that is provided to them, except with the express written consent of the party providing such Information.

7. <u>Confidentiality</u>. All Information and other items furnished by one party to the other will be considered confidential and proprietary. Each party shall not duplicate or copy any Information, written materials, artwork, designs, trademarks, prototypes, equipment, audio materials, or video materials (hereafter collectively referred to as "Materials"), that have been given to them by the other party. Upon the request of the party giving Information or Materials, the receiving party agrees to immediately return all Information and Materials that have been given to them, or that are otherwise in their possession or control, to the party giving such Information or Materials.

8. <u>Ownership</u>. VS acknowledges that the Customer is the owner and copyright holder (to the extent that copyrights exist), of all Information and Materials that Customer gives to VS. The Customer acknowledges that VS is the owner and copyright holder (to the extent that copyrights exist), of all Information and Materials that VS gives to Customer. This does not include any ideas, product packaging, label design, graphic design bearing The Customer's mark or graphic design made exclusively for The Customer. Any of the listed above items is to become Intellectual Property of the Customer upon their inception or creation. Each party understands that any use in any manner of the Information or Materials given to them by the other party, other than those expressly detailed in this agreement, without the express written consent of the giving party can be a violation of federal copyright law, and will subject the receiving party to applicable penalties and legal remedies.

9. <u>Legal Remedies</u>. Each party acknowledges that if they violate any of the terms of this Agreement, the other party may commence legal action against them for breach of contract, copyright infringement, trademark infringement and any other cause of action applicable under state or Federal law. Along with monetary damages, the party commencing any legal action shall be entitled to injunctive relief or the specific enforcement of this agreement, in addition to any other legal remedies available at law. The prevailing party in any legal action shall be entitled to an award of court costs, expenses and attorney's fees incurred in pursuing any legal action, to be paid by the other party. The venue for any such legal action shall be the courts of Canyon County, Idaho. By signing this Agreement, both parties agree to the subject to the jurisdiction of the courts of Canyon County, Idaho.

10. <u>Owners, Employees and Agents</u>. Each party agrees that all of their owners, employees and agents shall be bound by all of the terms of this Agreement.

11. <u>Act of God</u>. Either party shall be excused from performance of their obligations in a situation where an accident, fire, labor dispute, riot or civil commotion, rule or order of any governmental authority, failure of technical or other facilities, illness or incapacity of any person, or other cause of any kind not within the control of the party so affected ("Act of God") prevents that party from carrying out its obligations. In any case where a party affected by an Act of God is unable to resume its activities within 30 days, the other party may terminate the remaining term of the Agreement, subject to the payment to each party of any fees due from the other party.

12. <u>Return of Materials</u>. (A) In any case of termination of this agreement except termination by VS due to the breach of the Agreement by The Customer, VS agrees to ship, within five (5) business days, any materials provided to them by The Customer (namely boxes). In any case of termination of this Agreement except termination by VS due to the breach of the Agreement by The Customer, VS will also gives The Customer the first right to purchase any additional labels, bottles, ingredients or any other article that is part of the finalized package, or any fully packaged bottles, at their initial cost plus 50%, or if a finalized packaged bottle, at the sample bottle cost plus 50% – for the remaining inventory. The Customer will pay for the cost of remaining inventory plus the cost to ship it to The Customer up front before the remaining inventory is actually shipped.

(B) In the case where VS terminates the Agreement due to the breach by The Customer in accordance with Paragraph 3(C), VS shall provide a written notice to The Customer, via certified mail, that it plans to terminate the agreement. In the notice, VS shall give The Customer the first right to purchase any additional labels, bottles, ingredients or any other article that is part of the finalized package, or any fully packaged bottles, at their initial cost plus 50%, or if a finalized packaged bottle, at the sample bottle cost plus 50%. The customer will have 15 days from receipt of the notice to inform VS of their option to purchase or refusal of the inventory. If the customer excerises the option to purchase the inventory, they will have 7 days to submit payment for the inventory and any shipping involved to The Customer, and VS will promptly ship the remaining inventory. If The Customer refuses the option to purchase remaining inventory, then VS shall retain all inventory and may sell all remaining product. VS will not purchase any addtional inventory, from the date VS learns of the breach, to be used in accordance to The Customers prodcut. The revenue from such sales shall be applied towards any monetary damages due to VS. If any amounts remain after applying such revenues to the monetary damages, the remaining amounts shall be divided between the parties in accordance with the terms of Paragraph 4.

13. <u>Audit Rights</u>. (A) As to sales and financial records kept by VS, The Customer or an accountant or attorney on behalf of The Customer shall have the right to examine the books and records of VS pertaining to such sales. Such right of examination may be exercised no more than once per year, and no more than once per any statement of account or invoice given to The Customer. The Customer must provide VS with at least 30 days advance notice if The Customer desires to conduct an audit. Such examination shall take place at VS's offices or such other location as VS designates, during normal business hours, and at The Customer's sole expense. Such examination shall be completed within 60 days of its commencement. Should The Customer assert any underpayment after conducting such examination, the written report of the examiner shall be submitted to VS along with any demand for payment.

(B) As to sales and financial records kept by The Customer, VS or an accountant or attorney on behalf of VS shall have the right to examine the books and records of The Customer pertaining to such sales. Such right of examination may be exercised no more than once per year, and no more than once per any statement of account or invoice given to VS. VS must provide The Customer with at least 30 days advance notice if VS desires to conduct an audit. Such examination shall take place at The Customer's offices or such other location as The Customer designates, during normal business hours, and at the sole expense of VS. Such examination shall be completed within 60 days of its commencement. Should VS assert any underpayment after conducting such examination, the written report of the examiner shall be submitted to The Customer along with any demand for payment.

/
/
/
/

/
/
/
/
/
/
/

VAPE STORM LABS LLC

By _____
      Signature

Print Name: Derek Dame

Date: 2-9-16

Witness: _____

Print Name: Derin Hoffer


Customer Name: STAY FRESH VAPE CO., INC.

By _____
      Signature

Print Name: Sonny Westmoreland Jr.

Date: 2-9-16

Witness: Megan W

Print Name: Megan E Westmoreland

Address: 10611 Almond Tree Circle, Orlando, FL 32835

9